IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Gene Stockholm, Special Administrator of the Estate of Jose Luis Escoto, | ) ) ) ) | |
| Plaintiff, | ) ) ) | C/A No. 7:13-680-TMC |
| v. | ) ) | **ORDER** |
| T.K. Teaster, | ) ) | |
| Defendants. | ) ) | |

This matter is before the court on a motion for summary judgment filed by Defendant South Carolina Department of Public Safety ("SCDPS") (ECF No. 16) and a motion to dismiss, or alternatively, for summary judgment filed by Defendant T.K. Teaster ("Teaster") (ECF No. 18).[1] Plaintiff Gene Stockholm ("Stockholm"), Special Administrator of the Estate of Jose Luis Escoto ("Escoto") did not file a response to the motions.[2] A hearing was set for February 28, 2013, but on February 26, 2013, Stockholm, with the consent of Defendants, filed a motion requesting that the court decide the motions on the filings of the parties. (ECF No. 21). The court granted the motion

---

[1] In this case, because the court considers documents outside of the Complaint, the court will treat Defendant Teaster's motion as one for summary judgment. *See* Fed.R.Civ.P. 12(d) ("If on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[2] It appears that Escoto's name may actually be spelled Escotto. (ECF No. 18-1 at 2 n.1). However, the court will continue to use the spelling as set forth on the docket.

and cancelled the hearing. (ECF No. 22).[3] For the reasons below, the court grants Defendants' motions.

## I. Background/Procedural History

On October 21, 2010, after receiving a report of a vehicle speeding and being driven erratically, Trooper Teaster stopped a vehicle on I-26 being driven by Escoto. Escoto did not have a driver's license or any other identification and the vehicle was titled in the name of Jessica McElhaney.[4] Teaster smelled alcohol and marijuana, and noticed that Escoto's eyes were red and glassy and his speech was slurred. Teaster then walked to the passenger side of the car and began to talk with the passenger, Jose Sanchez ("Sanchez"), who appeared to be sleeping. Teaster attempted to wake Sanchez, but Sanchez ignored Teaster's questions and requests for identification. Teaster suspected Sanchez was also under the influence of drugs and/or alcohol. Teaster also observed what he believed to be liquor drinks in plastic bottles between the legs of Escoto and Sanchez. Teaster called for backup and Laurens County Deputy Christy Johnson ("Johnson") arrived to assist him.

When Escoto was first stopped, he had pulled over to the left side of the roadway and the passenger side of the car was extremely close to traffic. Once Johnson arrived on the scene, Teaster

---

[3] Stockholm's failure to file a response does not relieve Defendants from the burden imposed upon the moving party. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410 (4th Cir. 1993)(holding that while "the failure to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" (quoting Fed.R.Civ.P. 56(c)).

[4] On the dash camera video, Teaster stated that he had been told the car was traveling at 105 mph. However, radar results revealed that the vehicle was actually traveling between seventy-seven and eighty-one miles per hour. In any event, Escoto was speeding, as the posted speed limit was seventy miles per hour.

asked Escoto to move the car further from the roadway. Escoto complied and moved the car a few feet to the left farther from the roadway.

Teaster and Johnson then attempted to remove Sanchez from the car. After Johnson handcuffed Sanchez and was escorting him to her patrol car, Sanchez pulled away and a struggle ensued. At the same time, Escoto started the car and began to drive towards the interstate. Teaster leaned into the car from the passenger side and attempted to turn the car off. A struggle ensued between Teaster and Escoto and Escoto then began stabbing Teaster in the neck with a fork. Teaster warned Escoto that he would shoot if Escoto did not stop. Escoto continued stabbing Teaster and the car continued crossing over several lanes of I-26. Teaster fired three times striking Escoto, and the car came to a stop in the far right lane of I-26. Johnson stopped traffic and approached the vehicle with her weapon drawn. She opened the passenger door and pulled Teaster from the vehicle.

Teaster surrendered his service pistol to the State Law Enforcement Division ("SLED") investigators and was transported to the hospital, where he was treated for injuries to his neck and knee. Investigators secured the dash camera video from Teaster's patrol car and secured a metal fork from the driver's seat of the Pontiac.

Escoto was air-lifted to an area hospital and later died. In a voluntary statement to SLED, Sanchez admitted that he and Escoto had been drinking and postmortem toxicology testing revealed that Escoto's blood alcohol percentage was .105.

On October 17, 2012, Stockholm filed this action in state court alleging claims for assault and battery, violations of 42 U.S.C. §1983, and wrongful death seeking actual and punitive damages. On March 13, 2013, SCDPS, with Defendant Teaster's consent, removed the action to this court. Teaster has not been served. However, Defendant Teaster filed an answer denying the allegations and raising, inter alia, as a defense the insufficient service of process.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

### A. SCDPS's Summary Judgment Motion

SCDPS contends it is entitled to summary judgment on three grounds. The court agrees and addresses each ground separately below.

1. Liability under § 1983

A state agency is not a person subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67, 71 (1989). Under South Carolina law, SCDPS is a part of the executive branch of the South Carolina state government. S.C. Code Ann. § 1-30-10(A). Because SCDPS is an arm of the State of South Carolina, it is not capable of being sued for money damages under § 1983. SCDPS is, therefore, entitled to a dismissal of Stockholm's claims for money damages against it under § 1983 as a matter of law.

4

2. Supervisory liability

To the extent that Stockholm is asserting claims against supervisors or officials within the SCDPS, it is well established that the doctrine of respondeat superior generally is inapplicable to §1983 suits, absent an official policy or custom which results in illegal action. *Monell v. Dept. of Soc. Services*, 436 U.S. 658, 694 (1978); *see also Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective actions as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984). Stockholm has not alleged a pervasive or unreasonable risk of harm, nor a claim for inadequate training. *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Accordingly, SCDPS is entitled to summary judgment for any claims against based on supervisory liability.

3. Immunity under the South Carolina Tort Claims Act ("SCTCA")

The SCTCA provides a limited waiver of immunity for tort actions against the state. However, the state has not waived its immunity for intentional torts. *See* S.C. Code § 15-78-60 (17). Therefore, SCDPS is entitled to summary judgment on Stockholm's state law claims for the intentional torts of assault and battery.

**B. Teaster's Summary Judgment Motion**

In the Complaint, Stockholm asserts claims under § 1983, and state law claims for wrongful death and assault and battery. Stockholm's claims are based upon his allegations that Defendant Teaster had no probable cause to believe Escoto had committed any crime or legal violation and had no reasonable basis for believing Teaster's conduct was lawful, valid, or justifiable. (Compl. ¶¶ 7, 13, 14, 18, and 23). In his summary judgment motion, Teaster contends that he is entitled to summary judgment on several grounds, including that there is no genuine issue of material fact that

5

Teaster's use of force was warranted. The court agrees. There simply is no evidence establishing that Teaster violated Escoto's constitutional rights.

The use of deadly force by a policeman is not excessive when the officer has a reasonable apprehension that the suspect poses a threat to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). In judging whether a particular use of force satisfies the reasonableness standard, a court must view the situation facing the officer from his viewpoint. *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996). In *Graham v. Connor,* 490 U.S. 386 (1989), the United States Supreme Court held in determining whether an excessive force claim under §1983 has been established, the court must focus on the objective reasonableness of the officer from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

In *Graham,* the Court held that an analysis of excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The pivotal question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). The Fourth Amendment does not "require police officers to wait until a suspect shoots [or uses other deadly means] to confirm that a serious threat of harm exists." *Id.* at 643. An officer's liability is to be determined exclusively upon an examination and weighing of the information possessed immediately prior to and at the very moment he fired the fatal shot. *Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991).

Here, considering the facts as set forth in the record, and after reviewing the video of the incident, and resolving all rational inferences in favor of the nonmoving party, the court finds unequivocally that Defendant Teaster's use of force was objectively reasonable. Defendant Teaster stopped Escoto for speeding and driving erratically. During the traffic stop, Teaster smelled alcohol and marijuana and observed that Escoto's eyes were glassy and red and that his speech was slurred. Further, he suspected that the passenger, Sanchez, was also under the influence. During the course of the traffic stop, as Sanchez was being taken from the car, Escoto started the car and attempted to flee into traffic. Teaster tried to stop Escoto by attempting to turn off the car as Escoto was driving back onto the interstate. While the men were struggling, Escoto stabbed Teaster in the neck with a fork. Teaster ordered Escoto to stop and warned that if Escoto did not stop, he would shoot. Escoto refused to stop and had driven the car back onto the interstate when Teaster shot him.

Teaster clearly had probable cause to believe that Escoto's actions posed an immediate threat of serious physical harm to himself and motorists on the interstate. Therefore, Teaster's use of force did not violate Escoto's constitutional rights and Teaster is entitled to summary judgment as a matter of law on the § 1983 claims.

Additionally, Teaster is also entitled to summary judgment on the state law claims of assault and battery and wrongful death. A law enforcement officer who uses reasonable force in effecting a lawful arrest is not liable for assault or battery. *See Roberts v. City of Forest Acres*, 902 F.Supp. 662, 671 (D.S.C.1995); *Moody v. Ferguson*, 732 F.Supp. 627, 632 (D.S.C. 1989). However, if the officer uses excessive force, or "force greater than is reasonably necessary under the circumstances," the officer may be liable for assault or battery. *Moody,* 732 F.Supp. at 632. As discussed above, Defendant Teaster's actions were objectively reasonable, in light of the circumstances, and do not constitute assault and battery.

Finally, the state law wrongful death claim also fails because there is no predicate "wrongful

7

act, neglect or default of another." S.C. Code Ann. § 15-51-10 ("Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against his personal representative."). Therefore, Teaster is also entitled to summary judgment on the state law claims of assault and battery and wrongful death.[5]

### IV. Conclusion

Accordingly, based on the foregoing, Defendants' Motions for Summary Judgment (ECF Nos . 16 and 18) are **GRANTED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
June 3, 2014

---

[5] Teaster also moves for dismissal based on qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States Supreme Court held that government officials are not liable in civil actions if their conduct does not violate clearly established statutory rights of which a reasonable person would have known. As discussed above, Teaster did not violate Escoto's Constitutional rights in any way, and therefore, alternatively he is entitled to qualified immunity.

8